1  Philip J. Terry (SBN 148144)
   (*pjterry@cmprlaw.com*)
2  Richard C. O'Hare (SBN 167960)
   (*rohare@cmprlaw.com*)
3  Carrie J. Richey (SBN 270825)
   (*crichey@cmprlaw.com*)
4  CARLE, MACKIE, POWER & ROSS LLP
   100 B Street, Ste. 400
5  Santa Rosa, CA 95401
   Telephone: (707) 526-4200
6  Facsimile: (707) 526-4707

7  Attorneys for Plaintiff KLEIN FOODS, INC.

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10 KLEIN FOODS, INC., a California          Case No. 3:18-cv-06919-SK
   corporation, dba RODNEY STRONG WINE
11 ESTATES,                                 **MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
12           Plaintiff,                      APPLICATION FOR ENTRY OF
                                            DEFAULT JUDGMENT AGAINST
13      v.                                   DEFENDANT ARROW TANK COMPANY,
                                            INC.**
14 ARROW TANK COMPANY, INC., a New
   York corporation,                        Date:      June 3, 2019
15                                           Time:      9:30 a.m.
             Defendants.                     Location:  450 Golden Gate Avenue
16                                                      Courtroom C, 15th Floor
                                                        San Francisco, CA 94102
17
                                            Complaint Filed:  11-15-2018
18

19

20

21

22

23

24

25

26

27

28

CARLE, MACKIE,
POWER & ROSS LLP

1

## TABLE OF CONTENTS

2

I.  INTRODUCTION.................................................................................................. 1

3

II.  PROCEDURAL AND FACTUAL BACKGROUND............................................ 1

4

    A.  Factual Background.................................................................................... 1

5

    B.  Procedural Background............................................................................... 4

6

III.  LEGAL STANDARD.......................................................................................... 4

7

IV.  ARGUMENT ....................................................................................................... 5

8

    A. Judgment Should Be Entered Against Arrow and in Rodney Strong's Favor............... 5

9

        1. *Rodney Strong Will Be Prejudiced If Default Judgment Is Not Entered* ........... 5

10

        2.  *Rodney Strong Has Sufficiently Plead That It Is Entitled To Relief*................. 6

11

        3.  *Amount of Damages*........................................................................ 7

12

        4.  *There Is Little Possibility of a Dispute Concerning Material Facts* ................ 8

13

        5.  *Arrow's Failure to Appear Is Not Due to Excusable Neglect*.......................... 8

14

        6.  *The Final Eitel Factor Is Not Dispositive* ......................................... 9

15

    B.  Monetary Damages Sought Are Supported by the Evidence....................................... 9

16

V.  CONCLUSION ................................................................................................. 10

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ................................................. 5

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010) .................. 5

*Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) ................................................... 9

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ........................... 5

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ................................................. 1, 5, 7, 9

Fed. R. Civ. P. 55(b)(2) .................................................................................. 4

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ....................................... 4, 5

*HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012) ............................................................................... 5, 6, 7

*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) ........ 6, 8

*Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) .......................................... 6

*Oracle USA, Inc. v. Qtrax, Inc.*, No. C 09-3334 SBA BZ, 2011 WL 4853383 (N.D. Cal. Oct. 13, 2011) ........................................................................................ 4

*Oracle USA, Inc. v. Qtrax, Inc.*, No. C09-3334 SBA BZ, 2011 WL 4853436, at *1 (N.D. Cal. Sept. 27, 2011) .................................................................................. 4

*Pepsico, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ................... 9

*Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ......... 8

*Richards v. Sequoia Ins. Co.*, 195 Cal.App.4th 431, 124 Cal.Rptr.3d 637, 641 (2011) ............... 10

*Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) ................................................................................. 8

## Statutes

California Commercial Code sections 2314 and 2315 ...................................................... 7

Fed. R .Civ. P. 55(b)(1) .................................................................................. 9

Fed. R. Civ. P. 12 ........................................................................................ 4

Fed. R. Civ. P. 4(h)(1)(B) ................................................................................ 4

Fed. R. Civ. P. 54(b) .................................................................................. 1, 4

Fed. R. Civ. P. 55 ........................................................................................ 1

Fed. R. Civ. P. 55(b) ..................................................................................... 4

Fed. R. Civ. P. 8(b)(6) ................................................................................... 5

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 55 and Fed. R. Civ. P. 54(b), Plaintiff Klein Foods, Inc. dba "Rodney Strong Wine Estates" ("Rodney Strong" or "Plaintiff") hereby moves for entry of default judgment against Defendant Arrow Company, Inc., a New York corporation ("Arrow" or "Defendant") on the grounds that: (1) Arrow has failed to respond to the Complaint, (2) the Clerk of Court has entered default against Defendant (ECF 15), (3) Rodney Strong has sufficiently pleaded and established that Arrow has breached its contract to supply tanks to Rodney Strong, and (4) Rodney Strong has sufficiently established the amount of compensatory damages to be awarded.

In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit Court of Appeal established a number of factors a district court should consider in deciding whether to enter a default judgment.  As set forth herein, these factors weigh heavily in favor of the entry of a default judgment here.  In particular, Defendant has purposefully failed to appear and, if default judgment is not entered, Plaintiff will be left without any remedy to recover damages caused by Arrow. Accordingly, Plaintiff respectfully requests that this Court enter a default judgment against Arrow.

Accordingly, Rodney Strong moves the Court to enter a default judgment in the amount of $777,201.48 against Arrow.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Factual Background

In April 2013, Rodney Strong purchased nine 13,230 gallon and two 7,950 gallon American White Oak wine tanks from Arrow, totaling $415,200 plus the cost of shipping, to be used for storing and aging wine for the 2014 harvest and for future vintages. (Dkt. 1, Complaint ¶¶ 1, 11 (hereafter, "Compl."); *see also* Declaration of Tobin Ginter ("Ginter Decl.," ¶¶ 3–5), filed concurrently herewith).  Over a year later, Rodney Strong received the first batch of five tanks on April 28, 2014. (Compl., ¶ 11.)  Mike Rau, who works for an independent company, installed the tanks. (*Id.*, ¶ 12.)  Immediately, defects in the tanks were discovered.  The tank bottoms and staves point of connection were misaligned, requiring additional time for installation

that Arrow agreed to cover. (*Id.*)  Immediately after the first batch of tanks were assembled, the vertical wooden planks, *i.e.*, staves, began leaking and weeping. (*Id.*, ¶ 13.)  Rodney Strong notified Arrow of these problems and Arrow instructed Rau to repair the tanks when he installed the second batch of six tanks. (*Id.*)

At the end of July 2014 and beginning of August 2014, the second batch of tanks were assembled and immediately thereafter the second batch of tanks experienced the same leaking and weeping issues.  (*Id.*, ¶ 14.)  On or about August 22, 2014, Arrow agreed to replace or repair the tanks.  (*Id.*, ¶ 15.)

Over the next two months, Rodney Strong and Arrow debated the tank issues and Arrow agreed that Phil Burton ("Burton") of Barrel Builder, Inc. would assess the tanks.  (*Id.*, ¶ 16.)  After inspecting the tanks, Burton reported to Arrow, confirming the problems Rodney Strong experienced with the barrels.  (*Id.*)  On October 16, 2014, Burton wrote a letter to Arrow, stating that Rau "did a beautiful job of installing [the tanks]"; however, he noted "a lot of serious through wood leaks and several instances of leaks at the fingerjoints."  (*Id.*)  Burton stated some staves would need to be replaced and that food-grade epoxy was needed to fix the leaking.  (*Id.*)

Over the following two months, Arrow and Rodney Strong exchanged correspondence, attempting to find a solution. (*Id.*, ¶ 17.)  The parties agreed that Bill Wehr, the President of Arrow, would visit Rodney Strong's facility and try to repair the tanks. (*Id.*)

In January 2015, Bill performed a tank inspection and devised a repair plan, and in March of 2015, Bill attempted to repair the tanks. (*Id.*, ¶ 18.)  Rodney Strong monitored the tanks after the repairs for approximately a month, but the tanks continued to leak. (*Id.*)

Rodney Strong reached out to Burton again to help with repairing the tanks. (*Id.*, ¶ 19.)  In May 2015, Arrow agreed to allow Burton and his team at Barrel Builders to repair the tanks. (*Id.*)  From May to July 2015, Barrel Builders attempted to repair the tanks, but could not correct the problems. (*Id.*)  After numerous attempts, Barrel Builders was running out of ideas. (*Id.*)

On July 21, 2015, Burton issued a report, detailing the repair work and recommended replacing the staves. (*Id.*, ¶ 20.)  Burton noted that it had "spent a lot of time and effort trying to fix the multitude of leaking staves in your new tanks." (*Id.*)  Burton again noted that porous wood

1  and multiple weeping staves were found in every tank, and that the epoxy failed to stop the leaks.

2  (*Id.*)

3       When Rodney Strong sought an update from Arrow following the issuance of Burton's

4  report, on August 12, 2015, Arrow explained that it had "not responded because we have been

5  researching options and do not have an answer yet." (*Id.*, ¶ 21.)  Arrow indicated that it was

6  inquiring into new wood but it would take 14 months to secure.  Arrow insisted on repairing the

7  tanks rather than replacing them. (*Id.*)

8       At this point, Rodney Strong asked Arrow to replace the tanks or issue a refund. (*Id.*, ¶ 22.)

9  Arrow rejected this idea, and several weeks later requested another opportunity to repair the tanks.

10  (*Id.*)  Arrow proposed using an epoxy from a company named Permalite Plastics. (*Id.*)  After

11  performing its own investigation on the epoxy, Rodney Strong discovered it was not food grade.

12  (*Id.*)

13       Frustrated, in October 2015, Rodney Strong emailed Arrow, stating that if it could not

14  repair the tanks to working condition, Rodney Strong wanted its money back. (*Id.*, ¶ 23.)  Arrow

15  continued researching options. (*Id.*)  While Arrow was devising this plan, the tank wood began

16  drying out despite Rodney Strong performing bi-monthly maintenance on the tanks. (*Id.*)  This

17  made things considerably worse; hoops around the tanks fell off and joints gapped open. (*Id.*)

18       In December 2015, Bill Wehr visited Rodney Strong for a third attempt to repair the tanks

19  by installing an O'Sullivan 5313 wet surface liner. (*Id.*, ¶ 24.)  From January through February

20  2016, Barrel Builders stayed onsite to ensure the tanks were properly working, but Burton

21  concluded the tanks were worthless and should be scrapped.  (*Id.*)  On February 12, 2016, Burton

22  wrote to Rodney Strong, stating "we've been trying to make your wood tanks serviceable since

23  the spring of 2015 with very little success" because "the wood was very porous." (*Id.*)  In his 42

24  years of working with barrels, Burton had "never seen oak seep and leak anywhere near this

25  much." (*Id.*)  Burton concluded, despite Arrow's efforts to engage Barrel Builders to repair the

26  tanks, the tanks were "unusable." (*Id.*)

27       Following Bill Wehr's December 2015 visit, Arrow refused to reimburse Rodney Strong

28  for the faulty barrels and has stopped attempting to repair the tanks. (*Id.*, ¶ 25.)

Rodney Strong paid Mr. Rau $32,499.80 for assembling, servicing, and repairing the tanks, which was not reimbursed by Arrow. (Decl. of Ginter, ¶ 12.) In addition, Rodney Strong spent hundreds of thousands of dollars in connection with installing the tanks by paying vendors to install wine/transfer lines, catwalks, handrails, stairs, tank stands, concrete pads, electrical pumps and components, and drains for the tanks so they could be used to store and age wine.

B.    Procedural Background

On November 15, 2018, Plaintiff filed a Complaint against Defendant Arrow for Breach of Contract; Breach of Express Warranty; Breach of Implied Warranties; and Negligent Misrepresentation (ECF 1.) Arrow was served with the Summons on or about on December 19, 2018, in accordance with Fed. R. Civ. P. 4(h)(1)(B). The Proof of Service (ECF 10) was filed on January 7, 2019. Under Fed. R. Civ. P. 12, Defendant was required to respond, answer or otherwise plead to Complaint by January 9, 2019. On March 5, 2019, Defendant moved for entry of default against Defendant. In the Application, Rodney Strong's counsel declared that Arrow had no intention of appearing in this litigation and defending against it. (*Id.*)

On March 8, 2019, the Clerk of Court entered default against Arrow. (ECF 15.)

### III.    LEGAL STANDARD

Fed. R. Civ. P. 55(b) permits entry of a default judgment following entry of default. The plaintiff must apply to the court for a default judgement if plaintiff's claim is for a sum that it is not certain or a sum that cannot be made certain by computation. Fed. R. Civ. P. 55(b). A court must presume the truth of the complaint's factual allegations on a motion for default judgment, except with respect to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The Court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. *See* Fed. R. Civ. P. 55(b)(2). Corporate defendants, however, are not subject to these limitations. *Oracle USA, Inc. v. Qtrax, Inc*., No. C09-3334 SBA BZ, 2011 WL 4853436, at *1 (N.D. Cal. Sept. 27, 2011), report and recommendation adopted, No. C 09-3334 SBA BZ, 2011 WL 4853383 (N.D. Cal. Oct. 13, 2011).

Fed. R. Civ. P. 54(b) permits the Court to enter final judgment as to one or more, but fewer than all, the claims or parties if the Court expressly determines there is no reason for delay.

### IV.    ARGUMENT

Rodney Strong has sufficiently pleaded its breach of contract, breach of express warranty, and breach of implied warranty claims.  Successfully pleading its claims is all that is required of Rodney Strong to obtain a judgment in its favor upon default since the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party.  Fed. R. Civ. P. 8(b)(6); *see also, Geddes*, 559 F.2d at 560; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (on default motion "all factual allegations in the complaint are deemed true").

#### A.    Judgment Should Be Entered Against Arrow and in Rodney Strong's Favor

A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion the Court may consider the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits" (collectively the "*Eitel* Factors")  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Here, these factors weigh heavily in favor of the entry of a default judgment against Arrow.

##### 1.    *Rodney Strong Will Be Prejudiced If Default Judgment Is Not Entered*

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant who does not participate in litigation.  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010); *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012).  Default judgment is warranted if denying judgment would deny plaintiff a remedy until such time as defendant chooses to participate.  *Craigslist, Inc.*, 694 F. Supp. 2d at 1061 ("[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted") (internal quotations omitted).  Here, absent a default judgment, Rodney Strong will suffer prejudice if a default judgment is not entered against Arrow

because it will be forced to commit time, resources, and personnel to prosecute a lawsuit in which Arrow will not meaningfully participate.  Nor can Rodney Strong litigate against Arrow because it did not properly appear in Court.  Thus, Rodney Strong cannot conduct discovery or move the case forward without Arrow's participation.   Absent an entry of default against Defendant, Rodney Strong would clearly suffer prejudice.

### 2.    *Rodney Strong Has Sufficiently Plead That It Is Entitled To Relief*

"The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings."  *Landstar Ranger, Inc. v. Parth Enters., Inc*., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). "In its analysis of the second and third *Eitel* factors, the Court [must] accept as true all well-pleaded allegations regarding liability.  *HICA Educ. Loan Corp.*, 2012 WL 1156402, at *2.

Under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (internal citation omitted).

Rodney Strong entered into a contract with Arrow to purchase nine 13,230 gallon and two 7,950 gallon American White Oak wine tanks from Arrow, for $415,200 plus the cost of shipping, to be used for storing and aging wine. (Compl. ¶¶ 1, 11; Decl. of Ginter, ¶¶ 3–7.)  Immediately after installation, the tanks began leaking and weeping.  For over a year and a half, Rodney Strong patiently worked with Arrow while it made numerous attempts to repair the leakage by replacing staves, tightening the hoops, and applying various epoxy products.  However, after numerous failed attempts, Arrow was unable to repair the tanks, went radio silent on Rodney Strong, and now has refused Rodney Strong's demands for reimbursement of the cost of the tanks, shipping, and installation.  On or about August 22, 2014, Arrow agreed in writing to "repair or replace" the faulty tanks. (Compl., ¶ 28.)  Arrow materially breached the agreements by obtaining defective white oak wood and creating staves from such wood that were overly porous, leaky, and not fit for purpose, and by agreeing to replace or repair the tanks, which it never did. (*Id*., ¶ 29.)  As a result of Arrow's breach of its agreements, the tanks were unusable for their intended purpose.

1    (*Id.*, ¶ 30.)   Rodney Strong has performed all terms, conditions, and obligations required of it

2    under the agreements by paying Arrow for the tanks and its services. (*Id.*, ¶ 31.)

3           Moreover, Arrow made affirmations of facts and promises to Rodney Strong relating to

4    the tanks being sold by Arrow, in particular that the tanks could be used for aging wine. (*Id.*, ¶

5    34.)   Arrow expressly represented and warranted to Rodney Strong, among other things, that

6    Arrow is a preeminent company in tank manufacturing and that the tanks would be of the same

7    quality as the tanks Arrow had provided to Rodney Strong in the past for aging and storing wine.

8    (*Id.*, ¶ 34.)   The thanks sold to Rodney Strong did not conform to the representations made by

9    Arrow as part of its solicitation of Rodney Strong to purchase the tanks from Arrow. (*Id.*, ¶ 35.)

10   Thus, the tanks sold to Rodney Strong failed to satisfy the warranties as herein alleged. (*Id.*, ¶ 36.)

11   The defects in the tanks sold by Arrow are material and substantial and constitute breaches of

12   Arrow's express warranties made to Rodney Strong. (*Id.*, ¶ 37.)   Rodney Strong notified Arrow

13   of the breached warranties and provided Arrow with reasonable opportunities to cure, but Arrow

14   has failed to cure its breaches. (*Id.*, ¶¶ 38, 39.)

15          Further, pursuant to California Commercial Code sections 2314 and 2315, Arrow

16   impliedly warranted the wine tanks would be of merchantable quality and fit for their intended

17   purposes. (*Id.*, ¶ 42.)   Arrow breached the implied warranties to Rodney Strong by selling tanks

18   which leaked and were not fit for storing wine. (*Id.*, ¶ 43.)   Rodney Strong notified Arrow of the

19   breached warranties and provided Arrow with reasonable opportunities to cure, but Arrow has

20   failed to cure its breaches. (*Id.*, ¶¶ 38, 39.)

21          Because of Arrow's breaches, Rodney Strong suffered damages in the amount of the cost

22   of the tanks, assembly of the tanks, and repairs related to the tanks.

23          **3.     *Amount of Damages***

24          The fourth *Eitel* factor, the sum of money at stake, also weighs in favor of default

25   judgment. Under the fourth factor, "the court must consider the amount of money at stake in

26   relation to the seriousness of Defendant's conduct." *HICA Educ. Loan Corp.*, 2012 WL 1156402,

27   at *3 (citation omitted); *see also, Eitel*, 782 F.2d at 1471–72.   Default judgment is disfavored

28   when a large amount of money is involved or unreasonable in light of the potential loss caused

by the defendant's actions. *See, Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007).

Here, Rodney Strong seeks compensatory damages in the amount of $777,201.48, which represents the amount Rodney Strong paid for the installation and assembly of the tanks.  Thus, Rodney Strong is only seeking to recover damages for costs directly related to the tanks, and not additional damages for loss of income or profits.  Thus, this sum is entirely commensurate with the gravity of Arrow's breaches.  Arrow knew or should have known that if the tanks failed, Rodney Strong would have been damaged in the amount of the cost and assembly of the tanks. Thus, this factor weighs in favor of granting default judgment.

### 4.      There Is Little Possibility of a Dispute Concerning Material Facts

When the moving party supports its claims with ample evidence and the defaulting party makes "no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Landstar Ranger,* 725 F. Supp. 2d at 922.  Arrow did not oppose the Complaint, or appear in the action to defend it.  Arrow's counsel represented to Rodney Strong's counsel that it does not dispute liability.  Thus, there is no likelihood that genuine issues of material fact would preclude entry of default judgment.

### 5.      Arrow's Failure to Appear Is Not Due to Excusable Neglect

The possibility of excusable neglect is remote where the defendant is provided proper notice of the pending suit, but does not contact the court or the plaintiff in any manner.  *See Phillip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 501 (C.D. Cal. 2003). *Cf. Eitel*, 782 F.2d at 1472 (finding excusable neglect where "[t]he record shows that the parties engaged in earnest settlement negotiations after the complaint was served and in fact reached what appeared to be a final settlement agreement prior to the deadline for [the] answer").  On January 14, 2019, Rodney Strong's counsel spoke with Arrow's counsel who confirmed that Defendant would not be appearing, filing an Answer or otherwise responding to the Complaint, or defending against the case. (See Declaration of Carrie Richey ("Richey Decl."), filed concurrently herewith, ¶ 5.) Again on February 6, 2019, Arrow's counsel informed Rodney Strong's counsel that Defendant would not be entering an appearance in this action or defending against Plaintiff's claims. (*Id*. at

CARLE, MACKIE,
POWER & ROSS LLP

¶ 7.)  On February 28, 2019, Rodney Strong's counsel inform Arrow's counsel of Rodney Strong's intent to file an application to request a default be entered against Defendant. (*Id*. at ¶ 7; *see also id*. at Exhibit A.)  On March 4, 2019, Arrow's counsel again confirmed his client will not be appearing or defending this action. (Richey Decl., ¶ 9.)  Following entry of default by the Clerk, Rodney Strong's counsel informed Arrow that the default was entered. (Richey Decl., ¶ 10.)  Thus, Arrow had notice of the action and has had ample opportunity to appear before the instant motion for default judgment.  This *Eitel* factor also supports entry of a default judgment.

### 6.   The Final Eitel Factor Is Not Dispositive

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, where the defendant fails to respond to the plaintiff's complaint, a decision on the merits is impractical, if not impossible.  Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *Pepsico, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Arrow's failure to respond to the Complaint, which was served on them approximately four months ago, renders a decision on the merits highly impractical.  This factor weighs in the Rodney Strong's favor.

Here, Plaintiff submits that since each of the other six *Eitel* factors weighs heavily in favor of the grant of a default judgment, the entry of default judgment is warranted.

### B.   Monetary Damages Sought Are Supported by the Evidence

Rodney Strong seeks compensatory damages as a result of Arrow's breaches, namely the cost of faulty tanks paid to Arrow and the cost of installation.  The district court may determine the amount of damages without a hearing where "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *Cf.* Fed. R .Civ. P. 55(b)(1) (clerk may enter default judgment "with an affidavit showing the amount due").

Here, attached to the Declaration of Tobin Ginter is evidence of Rodney Strong's payments to various vendors in connection with installing and repairing the tanks.  Specifically, Rodney Strong has provided a check stub for each payment and an invoice from the vendor.  As summarized on **Exhibit 1** to Mr. Ginter's declaration, Rodney Strong has suffered direct losses

in the amount of $777,201.48.  These sums are compensable under a breach of contract and breach of warranty theories in order to put Rodney Strong "in as good a position as it would have been had performance been rendered as promised." *See Richards v. Sequoia Ins. Co*., 195 Cal.App.4th 431, 124 Cal.Rptr.3d 637, 641 (2011) (quoting *State v. Pac. Indem. Co*., 63 Cal.App.4th 1535, 75 Cal.Rptr.2d 69, 79 (1998)).   Because the amount of damages claimed by Rodney Strong is supported by evidence and based in law, the Court should enter a judgment in the amount of $777,201.48 against Arrow.

## V.      CONCLUSION

Arrow has purposefully chosen not to appear in this action, leaving no other recourse than for Rodney Strong to request that the Court enter judgment by default.   Thus, Rodney Strong respectfully requests that this Court enter the Proposed Judgment submitted herewith.

Dated:  April 29, 2019                          Respectfully submitted,

CARLE, MACKIE, POWER & ROSS LLP


By:   */s/ Carrie J. Richey*
   Philip J. Terry
   Richard C. O'Hare
   Carrie J. Richey
   100 B Street, Suite 400
   Santa Rosa, CA 95401
   Telephone: (707) 526-4200

   Attorneys for Plaintiff
   KLEIN FOODS, INC.